IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| TRANSDATA, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:10cv557 RWS-JDL |
| | § | |
| CENTERPOINT ENERGY HOUSTON ELECTRIC LLC, et al, | § § § | |
| | § | |
| Defendants. | § | |

| TRANSDATA, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 6:16cv407-JDL |
| | § | |
| CENTERPOINT ENERGY HOUSTON ELECTRIC, LLC, | § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Centerpoint Energy Houston Electric, LLC ("Centerpoint"), Denton Municipal Electric ("Denton"), Oncor Electric Delivery Company, LLC ("Oncor"), and Denton County Electric Cooperative d/b/a CoServ Electric ("CoServ") (collectively "Defendants") claim construction briefs regarding the term "proximate." (6:10-cv-557, Doc. No. 178; 6:16-cv-407, Doc. No. 21.)[1] Plaintiff Transdata, Inc. ("Transdata") has filed responsive briefs. (6:10-cv-557, Doc. No. 180; 6:16-cv-407, Doc. No. 22.)

---

[1] The briefing filed in both cases is nearly identical. Therefore, all citations herein will be to cause number 6:16-cv-407 unless otherwise noted.

**BACKGROUND**

The above-titled civil action number 6:10-cv-557 was originally filed on October 21, 2010, alleging Defendants Centerpoint, Denton, Oncor, and Texas-New Mexico Power Company[2] infringe U.S. Patent Nos. 6,903,699 ("the '699 Patent"), 6,492,713 ("the '713 Patent") and 6,181,294 ("the '294 Patent"). A separate civil action, 6:11-cv-113, was filed on March 14, 2011, alleging Defendant CoServ infringes the '294, '713, and '699 Patents. On January 27, 2012, these actions were transferred to the Western District of Oklahoma to proceed in multidistrict litigation in that district. (W.D. Okla. 5:12-ml-2309.) On February 22, 2016, the actions were remanded to this Court for trial from the Western District of Oklahoma. Upon remand, this Court held a status conference to address scheduling issues for trial. Thereafter, this Court severed Defendant Centerpoint into the above-captioned action, 6:16-cv-407, for a separate trial, and consolidated that action with 6:10-cv-577 as the lead case.

During the scheduling conference, Defendants indicated that they would like to file a motion requesting that the Court construe the term "proximate." Defendants stated that the MDL court had considered the term for claim construction, but held that it was a term of degree and that it was up to the jury to decide "how close is necessary to meet the term." (W.D. Okla. 5:12-ml-2309, Doc. No. 597.) This Court granted Defendants permission to file such a request, and thereafter Defendants filed the instant briefing, requesting that the Court construe the claim term "proximate" to mean "adjacent." (Doc. No. 21, at 2.)

**A. The Patents**

All of the asserted patents generally relate to electric meters and various components thereof. As it pertains to the present dispute, claim 17 of the '294 Patent is representative and recites:

---

[2] Texas-New Mexico Power Company was dismissed on March 28, 2016. (Doc. No. 141.)

**17.** An electric meter, comprising:
   an electric meter chassis having a dielectric housing
      protruding therefrom;
   electric meter circuitry;
   a wireless communication circuit coupled to said electric
      meter circuitry; and
   an antenna for allowing said electric meter circuitry to
      communicate Wirelessly through said dielectric
      housing, including:
      antenna elements, located proximate said electric meter
         circuitry, adapted to transmit and receive electro
         magnetic radiation, and
      a balance circuit, coupled to said antenna elements to
         cause said antenna elements to act as said antenna
         and to an unbalanced output port of said Wireless
         communication circuit, that balances an impedance
         of said unbalanced output port thereby to balance
         said antenna.

('294 Patent at 8:12-29.)

## APPLICABLE LAW

The Federal Circuit has held: "When the parties raise an actual dispute regarding the proper scope of [the] claims, the court . . . must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). The court must resolve the dispute because "the scope of the asserted claims is a question of law," and the court cannot leave "the jury free to consider the[] [parties'] arguments" on a disputed question of law. *Id.* at 1361–62.

The Court applies the familiar principles of claim construction to resolve this dispute. Those begin: "the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* at 1314. "[C]laims 'must be read in view of the specification, of which they are a

part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the

4

pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.*

In patent construction, "subsidiary fact finding is sometimes necessary" and the court "may have to make 'credibility judgments' about witnesses." *Teva v. Sandoz*, 135 S.Ct. 831, 838 (2015). In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 841. "If a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under review*." *Id.* (emphasis in original). When the court makes subsidiary factual findings about the extrinsic evidence in consideration of the "evidentiary underpinnings" of claim construction, those findings are reviewed for clear error on appeal. *Id.*

## ANALYSIS

Defendants argue that the construction of the term "proximate" is disputed and must be resolved. (Doc. No. 21, at 2.) Specifically, Defendant Centerpoint contends that its expert opined that "proximate" means adjacent ("next or nearest"), while Transdata's experts contend that "proximate" means "closely related in space," "very near," "near," "near with respect to the dimensions of the objects that are being considered for proximity," and that "two things are proximate if their distance from each other is very comparable to the largest dimension of the largest object being considered for proximity." *Id.* at 3. In support of their construction of "proximate" to mean "adjacent," Defendants cite to Figure 1 of the '294 Patent and argue that

5

because the claims already require the antenna element and electric circuitry to be under the housing, the term "proximate" must require something more than simply under the housing. (Doc. No. 21, at 5.) Lastly, Defendants argue that Transdata's experts' opinions should be rejected as flawed. (Doc. No. 21, at 6.)

Transdata argues that Defendants' construction of "proximate" is flawed because (1) it ignores the use of "proximate" in the specifications; (2) it excludes a disclosed embodiment; and (3) attempts to limit the claims to a disclosed embodiment. (Doc. No. 22, at 2.) Transdata contends that "proximate" need no construction, but that if the Court does construe the term, that it be construed to mean "nearby." (Doc. No. 22, at 3.) In support, Transdata cites to a portion of the specification that it contends equates the terms "nearby" and "proximate." *Id.* citing '294 Patent at 2:24–29 ("A roving truck carrying a transceiver may then establish communication with the meter as it passes nearby, thus reading the meter. Unfortunately, the truck must be physically deployed to locations proximate the meters.") Transdata contends that this portion of the specification also demonstrates that Defendants' proposed construction of "proximate" to mean "adjacent" is incorrect because it would require a truck reader to "drive onto a homeowner's lawn, through any fence, and around any tools or pets to pass … an electric meter in order to read it." (Doc. No. 22, at 3–4.) For this reason, Transdata also argues that Defendants' construction is inconsistent with Figure 1 of the '294 Patent. *Id.* Finally, Transdata contends that Defendants have changed positions in an effort to manufacture an *O2 Micro* issue, as they first contended "proximate" meant "near," then that it needed no construction, and now that it means "adjacent" or "immediately next to." (Doc. No. 22, at 5.)

The claims of the asserted patents recite the term "proximate" as a term of degree to express the closeness of components of an electrical meter. For example, claim 17 of the '294

Patent recites "antenna elements, located proximate said electric meter circuitry…". '294 Patent at 8:21–23. Similarly, claim 15 of the '713 Patent recites "an antenna element located within said dielectric housing proximate said circuit board rack…". '713 Patent at 8:12–14. The specification, in describing Figure 1, similarly describes "[t]he antenna 170 includes antenna elements 172, 174, located within the dielectric housing 120. In the illustrated embodiment, the antenna elements 172, 174 are located between the circuit boards 150 and proximate the electric meter circuitry 140." *See, e.g.*, '294 Patent at 4:56–60. Figure 1 is shown below:



FIG.1

('294 Patent (Fig. 1).)

As is seen in Figure 1, and similarly described in the specification, the antenna elements 172 and 174 are shown "proximate" to the electric meter circuitry 140. *See* '294 Patent Fig. 1; 4:56–60. Notably, as shown in Figure 1, a circuit board (150) is located between the antenna

7

elements (172 and 174) and the electric meter circuitry (140). '294 Patent Fig. 1. The specification contains no other discussion of the term proximate as it pertains to what is claimed under the housing of the electric meter. The only other mention of the term "proximate" in the specification is in relation to the truck readers being proximate the meters to get a reading. *See* '294 Patent at 2:24-29 ("A roving truck carrying a transceiver may then establish communication with the meter as it passes nearby, thus reading the meter. Unfortunately, the truck must be physically deployed to locations proximate the meters.")

From both the claims and the specification, it is clear that the asserted patents use the term "proximate" as a term of degree to describe the closeness of various components of the claimed electric meters. The claims and specification provide sufficient guidance for the bounds of this term. As Defendants concede, on the upper bound, "proximate" is bounded by the claim requirement of the dielectric housing itself. (Doc No. 21, at 4.) That is, the antenna element and the electric meter circuitry must be under the housing. *See, e.g.*, '294 Patent at 8:12–29; '713 Patent at 8:12–14. On the lower bound, the specification teaches that "proximate" must be something more than "adjacent" or "immediately next to." That is, the only instructive portion of the specification teaches that the electric meter circuitry need not be immediately next to the antenna elements, and indeed shows otherwise. '294 Patent Fig. 1; 4:56–60. Moreover, the embodiment that describes the reader truck, although it does not describe the term "proximate" as it pertains to components under the meter hood, also does not use the term "proximate" to mean "adjacent" or "immediately next to." *See* '294 Patent at 2:24–29 ("A roving truck carrying a transceiver may then establish communication with the meter as it passes nearby, thus reading the meter. Unfortunately, the truck must be physically deployed to locations proximate the meters.")

As explained herein, the term "proximate" cannot mean "adjacent." Having rejected Defendants' proposed construction, the Court has resolved the claim scope dispute between the parties. Within the bounds described herein, the term "proximate" is a term of degree limited by the parameters discussed herein. No further construction is necessary.

## CONCLUSION

As discussed herein, the Court has resolved the parties' dispute regarding the term "proximate," and finds no further construction is necessary.

**So ORDERED and SIGNED this 7th day of June, 2016.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE